On Rehearing.
Wyly, J.
Oh sixth February, 1857, Mrs. Paulina Pickett conveyed to R. C. Cummings the usufruct for life of the Chalk Level plantation by act under private signature, the consideration being her affection for him “ as well as the obligations I feel under toward him for his personal services and attention to my business as well in the parish of Bossier as elsewhere.”
On twentieth November, 1865, Cummings mortgaged to Mrs. Pickett the Chalk Level plantation to secure her against liability on accommodation paper, amounting to $300,000, given by her to Cummings & Co., A. H. Leonard accepting this mortgage as agent of Mrs. Pickett.
On twenty-fourth March, 1866, Charles E. Alter recorded a judgment which he had against Cummings in the parish of Bossier; and it is this right, as mortgage creditor of Cummings, which he asserts against the proceeds of the sale of the Chalk Level plantation.
On,third July, 1866, Mrs. Pickett mortgaged the Chalk Level plantation to Thomas B. Lee to secure ten notes for $10,000 each.
On third September, 1866, Mrs. Pickett by act under private signature renounced in favor of Lee the priority of her mortgage acquired from Cummings, the act reciting that “whereas, by an act dated Caddo parish, November 20, 1865, R. C. Cummings did specially mort-gage in my favor his life interest in the Chalk Level plantation.”
*533 On eighth October, 1872, Thomas B. Lee sued out an order of seizure and sale on one of the ten mortgage notes he acquired on third July, 1866, and the Chalk Level plantation was sold thereunder on seventh December, 1872, to the Union Bank; and the proceeds of this sale are now the subject of controversy. Prior to the sale the Citizens’ Bank, the Union Bank, and Mary B. Conner filed third oppositions, alleging that they held notes secured in the same mortgage from Mrs. Pickett to Lee, which said notes Lee had indorsed to them and therefore they were entitled to.be paid by preference over Lee out of the proceeds of the sale of the mortgaged property.
Charles E. Alter also filed a third opposition, setting up his mortgage rights, resulting from the registry of his judgment against Cummings in Bossier parish on twenty-fourth March, 1866, and alleging that the Chalk Level plantation (the proceeds of which are in controversy) belonged to Cummings; that Mrs. Pickett and those claiming under her are estopped from denying Cummings’ title' to said plantation, because she accepted a mortgage on said plantation from him on twentieth November, 1865, thereby tacitly acknowledging him as owner thereof. He also claims a mortgage on the usufruct of Cummings in the event it should be held that he only held the right of a usufructuary on said plantation ; and as mortgagee of the right of usufruct he claims a portion of the proceeds of the sale of said plantation equal to the value thereof, in view of the fact that said right of usufruct was sold, as lie alleges, under the foreclosure of the mortgage of Lee. The court below rejected the demand of Alter, dismissed his opposition, and distributed the proceeds of the sale of the Chalk Level plantation between the other opponents and plaintiff. From this judgment Charles E. Alter has appealed.
The inquiry is limited then to the validity and extent of his rights as against plaintiff and the opponents, the Citizens’ Bank, the Union Bank and Mary B. Conner in relation to the funds in controversy.
If the Chalk Level plantation belonged to E. C. Cummings and appeared so in the notarial books of the parish of Bossier, Alter would have a right to the proceeds superior to the other parties to this suit, because his judicial mortgage ranks from twenty-fourth March, 1866, the day he recorded his judgment against Cummings, and this was prior to the mortgage- given by Mrs. Pickett out of which the rights of all the appellees arise.
But Cummings had no title from Mrs. Pickett which had effect as to third persons, because none was recorded-in the book of conveyances in the recorder’s office of the parish of Bossier.
The only evidence of title in him was Mrs. Pickett’s implied acknowledgment when she accepted from him a mortgage on her Chalk Level plantation, if indeed she did ratify the act of A. H. Leonard, *534 Esq., who without authority accepted in her behalf the mortgage from Cummings. If, instead of an implied recognition of title,- which Mrs.: Pickett was estopped from denying, she had made to Cummings a regular conveyance of the'Chalk Level plantation, and the deed was not recorded, it would be without effect as to third persons accepting title or a mortgage subsequently from Mrs. Pickett who appeared on the public records as the owner of the Chalk Level plantation.
It is not pretended there was a registry in the conveyance books of the parish, of the mortgage which operated the estoppel, assuming that such would amount to a public notice of title, about which we express no opinion.
As to third persons, therefore, the pretended title of Cummings was utterly without effect. It was not disclosed to the public when the mortgage of Mrs. Pickett to the appellees was granted, and there is no evidence that it has ever been disclosed by registry in the parish of Bossier, where the Chalk Level plantation is situated. The registry in the mortgage book would be good for a mortgage, but would be no registry for a title. Our conclusion, therefore is, that the mortgage granted by Mrs. Pickett, on third July, 1866, to Thomas B. Lee on the Chalk Level plantation, the title of which stood on the public records in her name, was and is not' defeated by the judicial mortgage of Charles E. Alter against R. C. Cummings. As a mortgage creditor Alter can not successfully contest with the appellees for the proceeds of the sale of the Chalk Level plantation.
As mortgagee of the usufruct which Mrs. Pickett attempted to create in favor of Cummings he is equally unfortunate. The registry of his judgment against Cummings did not give Alter a mortgage on the right of usufruct of the Chalk Level plantation, because no such right was legally acquired by Cummings. The act granting it is an act under private signature; and therefore invalid as a donation. It is not good as a sale or a giving in payment, as there was no price stated in the act. If, however, Cummings had the right of usufruct, and Alter, by the registry of his judgment against him, had acquired a mortgage thereon, Alter should' have asked for a separate appraisement prior to the sale, in order that his part of the proceeds could be ascertained with legal certainty. On the whole, we are satisfied that the judgment appealed from is correct.
It is therefore ordered that our former judgment rendered in this case remain undisturbed.